## Long v. Holben et ux.

*E. J. Gehringer*, for plaintiff.
*A. K. Hettinger*, for defendants.

HENNINGER, J., March 13, 1939.—Plaintiff on October 11, 1938, visited defendants' place of business and agreed orally to purchase the same for $12,500, paying $1,000 in cash on account and agreeing to pay $1,000 in cash on October 25, 1938, the date fixed for final settlement, to assume a $6,000 mortgage at that time, and then to execute a $4,500 second mortgage to defendants. On October 17, 1938, plaintiff, through his attorney, notified defendants he would not proceed with the sale and demanded return of his down payment. In an amendment to plaintiff's statement of claim, it is alleged that the property is presently worth the price agreed upon and that defendants have suffered no loss.

Defendants filed an affidavit raising the question of law that, under the facts pleaded, plaintiff had not shown a cause of action and the question of law thus raised is now before the court.

The principle of law applicable to this situation is set forth in Sanders v. Brock, 230 Pa. 609, 614: " 'the party

who has advanced money, or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.' "

This principle was quoted from Hansbrough v. Peck, 72 U. S. 497, 506, and was cited with approval in Roberts v. Roesch, 306 Pa. 435, 441. It has been applied in other cases: Hausman v. Johnson, 32 Pa. Superior Ct. 339; Irvin v. Bleakley, 67 Pa. 24; Boyd v. McCullough, 137 Pa. 7; Benco v. Schustzer, 10 Leh. L. J. 105.

Cases cited by plaintiff where vendee has been entitled to recover down payments are easily distinguishable. In Kunkel v. Roberts, 16 Dist. R. 179, the court held that the vendor had excused prompt compliance, that his later demand for payment within three days was unreasonable, and that his immediate resale of the property made it impossible for him to perform and that two thirds of the purchase price had been paid. A similar situation arises in Howard v. Stillwagon, 232 Pa. 625, in which two thirds of the cash payment had been made and in which the vendor rescinded the contract by issuing ejectment.

In Artzerounian et al. v. Demetriades, 276 Pa. 303, and Smyth v. Resnick, 82 Pa. Superior Ct. 208, the agreement had provided for a specific sum in liquidation of damages and the court held that the vendor was not entitled to retain more than that sum upon rescission or breach.

In Sands, Herdic & Co. v. Arthur, 84 Pa. 479, and Conrade, etc., v. O'Brien, 1 Pa. Superior Ct., 104, where there was to be an application of wages or of a balance due upon a contract to the purchase price of a lot, it was held (in the Arthur case) that no such application had been made and no agreement as to the size of the lot. In the O'Brien case, the court held there was no contract at all because, in a building operation, no particular house

had been agreed to and the contract was parol. In our case, plaintiff himself has, in his statement, supplied all the terms of a complete contract. There was then a full meeting of the minds but no sufficient writing in evidence thereof.

In our case, the down payment was less than 10 percent of the total price; it was earnest money to bind the bargain and not a substantial payment upon the purchase price; defendants always stood ready and willing to convey to plaintiff and, for anything we can gather from the pleadings, are still so ready and willing; plaintiff rescinded prior to the time when defendants were to deliver title, hence, they were not required to perform the futile act of tendering a deed; to all intents and purposes, plaintiff has been and remains the only party in default.

The averment in the amendment to the statement that defendants have suffered no loss does not affect the situation. In Sanders v. Brock, supra, page 618, the following language from Ketchum et al. v. Evertson, 13 Johns. 359, 7 Am. Dec. 384 (N. Y.), is cited with approval:

" 'It would be an alarming doctrine to hold, that the plaintiffs might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case; the plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. Why should he not sell? The plaintiffs renounced the contract, and peremptorily refused to fulfill it; it was in vain, therefore, to keep the land for them. The plaintiffs

cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principle of law.' "

In Sanders v. Brock, the vendor had actually resold at a profit and yet was not required to reimburse the defaulting vendee.

Plaintiff then contends that, since the contract was within the statute of frauds, he had the right to avoid it at will and demand the return of his money. This point is ruled against him by Roberts v. Roesch, supra. There a part of the contract was proved by parol testimony rendering the entire contract parol, yet the court, under the authority of Hathaway et al., to use, v. Hoge, 1 Sadler 119, and Allison v. Montgomery, 107 Pa. 455, held (p. 440):

"To permit defendant to keep what plaintiff voluntarily paid is not in any way enforcing the contract, for the plaintiff need not take the land. The plaintiff alone refused to carry out the contract, and under the facts and law of the case defendant is clearly entitled to keep the payments made on account of the purchase price." To the same effect is Benco v. Schustzer, supra.

The A. L. I. Restatement of Contracts §355, subsec. (4), provides:

"There is no right of restitution against a defendant who is not in default and who is ready and willing to perform the contract or to execute a memorandum sufficient to make it enforceable, except to the extent that such a right would exist if the requirements of the Statute were satisfied and the contract an enforceable one." To the same effect is section 217(b) of the same Restatement.

This case is to be distinguished from Jacoby v. Pipher, 92 Pa. Superior Ct. 324, in which a vendor in a parol contract for the sale of land, suing for the down payment, was nonsuited. There the action was by the vendor for only a part of the consideration. If he had recovered, he

could still have disavowed his contract. In our case, the down payment was made voluntarily and plaintiff's unwillingness to abide by his bargain alone prevented full performance.

Under these circumstances we must hold that plaintiff has not pleaded a state of facts entitling him to recovery. Nor do we see any way in which an amendment would cure the situation.

And now, March 13, 1939, defendants' affidavit of defense raising questions of law is sustained and it is ordered and decreed that judgment be entered in favor of defendants and against plaintiff.